UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RUBEN ELEAZAR JARAMILLO,

     Plaintiff,

v.                            Case No.:  6:20-cv-1722-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff Ruben Eleazar Jaramillo seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.    Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on August 2, 2018, alleging disability beginning May 1, 2018. (Tr. 102, 190-91). The application was denied initially on December 7, 2018, and upon reconsideration on March 12, 2019. (Tr. 102, 119). Plaintiff requested a hearing and on December 30, 2019, a hearing was held before Administrative Law Judge ("ALJ") Julio Ocampo. (Tr. 35-72). On January 27, 2020, the ALJ entered a decision finding Plaintiff not disabled from May 1, 2018, through the date of the decision. (Tr. 16-29).

Plaintiff requested review of the hearing decision, but the Appeals Council denied Plaintiff's request on July 28, 2020. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on September 21, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 23).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022. (Tr. 18). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2018, the alleged onset date. (Tr. 18). At step two, the ALJ found that Plaintiff had the following severe impairments: "multiple sclerosis,

urinary tract disorder, spine disorder, status/post C6/7 anterior cervical discectomy with allograft, depression, anxiety, and neurocognitive disorder." (Tr. 18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 §§ C.F.R. 404.1520(d), 404.1525, and 404.1526). (Tr. 19).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 [C.F.R. §] 404.1567(a). The claimant can frequently reach in all directions bilaterally. The claimant can frequently handle and finger bilaterally. The claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolding. The claimant can occasionally balance, stoop, knee, crouch, and crawl. The claimant may only occasionally work at unprotected heights and around moving mechanical parts. The claimant can only have occasional exposure to humidity and wetness, dust, odor, fumes, or other pulmonary irritants. The claimant can only have occasional exposure to extreme cold and extreme heat. The claimant is limited to unskilled work because he is limited to performing simple routine tasks and making simple work[-] related decisions.

(Tr. 20). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a music teacher, elementary school teacher, and teacher aide I. (Tr. 27).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age (45 on the alleged onset date), education (at least high school), work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Tr. 27-28). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1)  addresser, DOT[1] 209-587.010, sedentary, SVP 2

(2)  touch up screener (printer circuit board assembly), DOT 726.684-110, sedentary, SVP 2

(3)  lacquerer, DOT 715.684-138, sedentary, SVP 2.

(Tr. 28). The ALJ concluded that Plaintiff had not been under a disability from May 1, 2018, through the date of the decision. (Tr. 29).

## II.   Analysis

On appeal, Plaintiff raises a single issue: whether the ALJ applied the correct legal standards to Plaintiff's testimony regarding his limitations. (Doc. 25, p. 14). Plaintiff argues the ALJ's reasons for rejecting Plaintiff's testimony regarding his limitations is insufficient and not supported by substantial evidence. (Doc. 25, p. 16). The Commissioner contends the ALJ properly reviewed the entire record including Plaintiff's subjective complaints in accordance with the appropriate regulatory criteria and legal authority. (Doc. 25, p. 19).

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

A claimant may establish that he is disabled through his own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210). When evaluating a claimant's testimony, the ALJ should consider: "(1) the claimant's daily activities; (2) the 'duration, frequency, and intensity' of the claimant's symptoms; (3) '[p]recipitating and aggravating factors'; (4) the effectiveness and side effects of any medications; and (5) treatment or other measures taken by the claimant to alleviate symptoms." *Id.* (quoting 20 C.F.R. §§ 404.1529(c), 416.929(c)(3)). The ALJ must consider these factors given all of the evidence of record. *Id.* And if the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395 F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)).

A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

In the decision, the ALJ made the following findings as to Plaintiff's subjective complaints:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the medical evidence of record does not support the claimant's allegations that he has frequent urinary accidents or that he goes to the bathroom ten times a day and has to be near a bathroom. The treatment record from Dr. Havkin showed the claimant recommended further treatment, but the claimant did not proceed with further testing. Later examinations noted the claimant no longer required the use of a catheter.

(Tr. 26).

Plaintiff argues that the ALJ's findings that the record does not support Plaintiff's allegations that he has frequent urinary accidents, goes to the bathroom ten times a day, and has to be near a bathroom is belied by the record. (Doc. 25, p. 18). Plaintiff also argues that even though the ALJ claimed Boris Havkin, M.D.

recommended further treatment or testing, the ALJ did not support this statement with citation to the record and it is unclear what further treatment or testing he was referencing. (Doc. 25, p. 16). And finally, Plaintiff argues that the ALJ provided no reasons why he rejected Plaintiff's testimony regarding his severe fatigue and resultant limitations. (Doc. 25, p. 18).

The ALJ found Plaintiff's statements that he had frequent urinary accidents, he went to the bathroom ten times a day, and he had to be near a bathroom inconsistent with and unsupported by the medical evidence of record. (Tr. 26). In the decision, the ALJ noted the following regarding Plaintiff's urinary issues. Plaintiff sought emergency medical treatment for decreased urine output and inability to void his bladder. (Tr. 22). Plaintiff reported episodes of increased urinary frequency and would occasionally urinate on himself. (Tr. 22). Plaintiff had a Foley catheter inserted so that he could void urine. (Tr. 22). Dr. Havkin's November 28, 2018 treatment note regarding urinary retention reported that while the catheter was inserted, Plaintiff was prescribed an antibiotic for a urinary tract infection. (Tr. 22). In early December 2018, Plaintiff sought emergency treatment for problems with his Foley catheter, which was replaced, allowing him to empty his bladder. (Tr. 22). Later in December, the ALJ noted that Plaintiff returned to Dr. Havkin for continued painful urination. (Tr. 23). Plaintiff underwent a complete circumferential cystoscopy, including retroflexion with the bladder. (Tr. 23). At a consultative

examination conducted by Monika Lippold, M.D. in January 2019, Plaintiff reported some urinary incontinence, had a small amount of spillage twice a week, and was no longer catheterized. (Tr. 24).

The medical records as cited by the ALJ are replete with treatments for urinary problems such as being unable to void the bladder, frequent urination, and incontinence. Dr. Havkin found that some of these issues are tied to Plaintiff's long-standing history of multiple sclerosis, "and therefore [there is a] significant potential impact of the diagnosis on his lower urinary tract function." (Tr. 584). The ALJ failed to cite to any medical records that are inconsistent with or do not support Plaintiff's claims of frequent urinary accidents, his need for frequent bathroom visits, or his need to be near a bathroom.

The ALJ also found Plaintiff's subjective complaints inconsistent with the record because "[t]he treatment record from Dr. Havkin showed the claimant recommended further treatment, but the claimant did not proceed with further testing." (Tr. 26).[2] In November 2018, Dr. Havkin recommended further objective evaluation with TRUS/UDS/cystourethroscopy[3] prior to making other therapeutic recommendations. (Tr. 584). In December 2018, Plaintiff had a cystourethroscopy

---

[2] The ALJ's statement is unclear. It is doubtful that "the claimant recommended further treatment." (Tr. 26). From the context, the Court interprets the statement to mean that Dr. Havkin recommended further treatment or testing.

[3] "TRUS" stands for trans rectal ultrasound guided biopsy and "UDS" stands for urodynamic studies which tests the bladder, sphincters, and urethra.

performed by Dr. Havkin and his TRUS was reviewed. (Tr. 572). Dr. Havkin found Plaintiff would not benefit from any aggressive treatments. (Tr. 572). The ALJ failed to cite to medical records that support his statement that Dr. Havkin recommended further unidentified tests or treatment that Plaintiff refused or failed to complete.

Considering the evidence as a whole, the ALJ's reasons to discount Plaintiff's subjective complaints concerning his urinary problems and suggested treatment or testing are not supported by substantial evidence. Plaintiff complained of urinary frequency and incontinence and the medical records show the medical providers treated Plaintiff for these ongoing complaints. And without citation to the record, the ALJ's statement that Plaintiff did not proceed with some unidentified treatment or testing is not supported by the record. For these reasons, the Court will remand this action to the Commissioner to reconsider Plaintiff's subjective complaints. Upon remand, the Commissioner is directed to also consider Plaintiff's allegations of severe fatigue and any resultant limitations.

## III.   Conclusion

The decision of the Commissioner is **REVERSED,** and this action is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Plaintiff's subjective symptoms in conjunction with the other evidence of record. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and thereafter close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on October 1, 2021.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties